# IN THE UNITED STATES DISTRICT COURT
# FOR NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH COLLINS, )<br>)<br>    Plaintiff, )<br> vs. )<br>)<br>UNITED STATES OF AMERICA and )<br>TRANSPORTATION SECURITY )<br>ADMINISTRATION, )<br>)<br>    Defendants. ) | 08 CV 851<br><br>Judge Robert W. Gettleman |

## OPPOSITION TO MOTION TO TRANSFER

In opposition to the motion to transfer filed by defendants United States of America and Transportation Security Administration (collectively "TSA"), plaintiff states as follows:

### Introduction

To meet its burden as a movant, TSA must demonstrate that judicial notions of convenience and justice clearly dictate that plaintiff -- whose home forum is afforded great weight and deference -- should bear the inconvenience and costs of traveling to Miami for various hearings, motions, depositions, and trial in a case where the claimed damages are approximately $3,000. As set forth below, TSA has not and cannot meet this burden. For this reason, and reasons consistent with the decisions of this and other courts, TSA's motion should be denied.

### Argument

I.     <u>TSA Misconstrues The Nature Of The Case</u>

This is a case over a $3,000 watch -- a wedding present from plaintiff's wife -- that was stolen from plaintiff's luggage at Miami International Airport while in the possession, custody

and control of TSA. As set forth in the complaint, given the concealed location of the watch inside the luggage, only an x-ray could locate it, and only TSA had x-ray machines in the airport to screen the luggage. Less than 48 hours after the incident, plaintiff filed a claim with TSA for reimbursement, a process that purports to reimburse passengers with valid claims for loss or damage. Plaintiff fully expected to receive full or partial reimbursement for the watch, but never received a response from TSA. Under statute, plaintiff was required to file this suit in order to preserve his claim and to receive just compensation.

Plaintiff has not sued TSA and its employees for theft, as TSA implies. This is a negligence case. The complaint alleges that TSA had a duty to implement procedures, including video surveillance, safeguards, and training, to protect plaintiff's belongings from employee theft. Surprisingly, TSA denies that it owes any such duty to the citizens that entrust it with their luggage. It is even more surprising in light of the fact that the Office of Inspector General expressly recommended *these very same procedures*. 2005 OIG Report (Ex. A). These recommendations were issued in 2005 in response to a dramatic rise in actual and reported thefts involving TSA employees. Id. at p. 7.

Such safeguards are particularly necessary in Miami International Airport where, according to a recent analysis of TSA data, over 1,500 items have been reported stolen to TSA in the past five years. See Airline Passengers Lose Items To Luggage Theft, NBC6.net, March 17, 2008 (Ex. B). In fact, the most notorious TSA theft ring worked in Miami International Airport. The kingpins of this Miami theft ring, both of whom were TSA baggage handlers, were arrested and indicted by the Department of Justice. See U.S.A. v. Washington, No. 03-20648, United States District Court, Southern District of Florida (Ex. C). Such a shocking indictment only underscores TSA's heightened duty to monitor for theft in Miami International Airport.

TSA's own investigative report of plaintiff's incident, which surfaced for the first time in TSA's motion, demonstrates that the OIG's recommended safeguards are non-existent. *See* TSA Investigative Report (Ex. D). According to the Investigative Report, TSA employees could not locate the x-ray screening area where plaintiff's luggage was examined just 2 days after the occurrence, or identify the specific TSA employee who handled plaintiff's luggage. No video, no paper trail, no anything. A simple tracking of the ticket agent's tags and baggage numbers, which plaintiff provided to TSA when the claim was filed, should have been more than sufficient. Moreover, TSA incorrectly stated crucial facts in the Investigative Report. For example, TSA believed incorrectly that plaintiff's flight was delayed for four hours, when in fact the flight left on time. This incorrect fact caused TSA to conclude that plaintiff's luggage was left unattended for several hours. Indeed, TSA could not even send the Investigative Report to plaintiff's correct home address. Simply put, this botched report all but establishes TSA's gross negligence.

II.     TSA Fails To Satisfy The Requirements Of Section 1401(a)

Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In other words, a transfer is appropriate if: (1) venue is proper in both the transferor and transferee courts; (2) transfer will serve the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Boyd v. Snyder*, 44 F. Supp. 2d 966, 988 (N.D. Ill. 1999). Whether to transfer a case is within the sound discretion of the transferor court. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The party requesting transfer bears the burden of demonstrating that the transferee forum is clearly more convenient than the transferor forum. *Id.* As set forth below, TSA fails to meet its burden.

A.   TRANSFER WOULD BE INCONVENIENT

Because the parties concede that venue is proper in both this court and the Southern District of Florida, the court may proceed directly to an analysis of the second factor; *i.e.*, whether transfer will serve the convenience of the parties and witnesses. It would not.

In assessing the convenience of the parties and witnesses, the Court considers five sub-factors. *See Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 774 (N.D. Ill. 1998). First, the court looks to the plaintiff's chosen forum. "The plaintiff's choice of forum is ordinarily entitled to substantial weight under Section 1404(a), especially if it is plaintiff's home forum. *FPC Corp. v. Uniplast, Inc.*, 994 F.Supp. 945, 946 (N.D. Ill. 1998). Here, Chicago is plaintiff's home forum. Thus, this factor weighs heavily in favor of plaintiff.

The second factor, the *situs* of material events, is neutral. Plaintiff alleges that the incident itself occurred in Florida. Defendants assert that it occurred either in Florida or Chicago. With respect to TSA's failure to adhere to the directives in the Inspector General's report, it is presently unknown where these alleged acts occurred.

The third and fourth factors, the convenience of the witnesses and ease of access to sources of proof, are also neutral. As set forth above, this is a *res ipsa loquitur* case. If the OIG Report and TSA's own Investigative Report are not evidence enough that TSA breached its duty to ensure proper measures were in place to prevent this incident, and TSA insists on proceeding forward with its defense, at the expense of plaintiff and all federal taxpayers, minimal written discovery and requests for admissions are seemingly all that are needed. This discovery and motion practice will all occur in Chicago, and any arguments or motions regarding discovery would similarly occur in Chicago. In fact, plaintiff next intends to file a motion for summary judgment based on the TSA Investigative Report itself.

With respect to depositions, plaintiff presently intends to depose one agency designee who can testify as to what safeguards, if any, were in place prior to the occurrence, and why the Inspector General's directives were entirely ignored. That designee may reside in Washington D.C., Florida, or elsewhere. The deposition should occur in Chicago, but travel to another state may be involved.

TSA, on the other hand, deems it necessary to depose over *one dozen* witnesses in Florida, including non-party witnesses, over a $3,000 case. The reason for this scattershot deposition approach is not due to plaintiff's allegations, but instead is due to TSA's own failure to identify who inspected plaintiff's luggage and where it was inspected. In short, TSA wants plaintiff to incur even more out-of-pocket expense that he has already incurred due to TSA's negligent inability to conduct a thorough investigation.

Moreover, these witnesses will add nothing to the dispute because according to TSA's affidavit none of them know whether or not they inspected plaintiff's luggage. It is certainly doubtful that any of them would confess to a theft. As for their expected self-serving testimony regarding "standard procedures," plaintiff has not alleged that it is TSA's standard procedure to steal from passengers. In any event, those witnesses can submit affidavits to that effect; depositions are unnecessary given the scope of this case.

Further, the ease of access to sources of proof does not weigh heavily in favor of one forum over the other. TSA's argument that all of its evidence and relevant witnesses are likely in Florida is misplaced. The actual number of relevant documents and witnesses that will have to travel to Illinois, if this case goes to trial, are likely small. Further, the parties can conduct pretrial discovery in Florida if necessary, negating the need to transport documents and witnesses outside of Florida. One recent decision in this district provided a similar rationale in denying

CHGO1\31238213.1                                    5

transfer. *See Mables v. IndyMac Bank, F.S.B.*, No. 08 C 2216, 2008 WL 2397681 (N.D. Ill.) (June 9, 2008) (denying motion to transfer where plaintiff's choice of forum was Illinois and pretrial discovery in foreign state would alleviate inconvenience of parties and witnesses).

The last factor, the convenience of the parties in litigating in each respective forum, weighs heavily against transfer. It would be highly inconvenient for plaintiff to travel to Miami for status hearings, motions, arguments, depositions, discovery proceedings and trial. Indeed, it is entirely cost-prohibitive given the amounts in controversy. TSA will likely object to plaintiff's discovery regarding TSA's standards, procedures and findings during pretrial discovery, and discovery motions and hearings would be required. Travel to one or two status hearings in Florida (with carry-on luggage, presumably), or having to hire counsel in Miami, makes the case unduly expensive for plaintiff. TSA, on the other hand, has sufficient resources to defend this case in Chicago, Florida, Washington D.C., or any other relevant venue.

In sum, the factors relevant to assessing the convenience of the parties and witnesses in litigating the case in both forums do not weigh in favor of transfer. "Transfer under Section 1404(a) is not designed to merely shift inconveniences between equally situated parties." *Indymac*, 2008 WL 2397681 at *5 (quotations omitted). Here, "[a]ny increase in convenience a transfer would provide to [defendant] does not outweigh the inconvenience it would create for [plaintiff]." *Id.*

B.   TRANSFER WOULD BE UNJUST

Finally, the court must consider whether transfer is in the interest of justice. TSA has cited no reason why it would be more just to litigate this case in another venue, and therefore has failed to meet their burden in establishing this factor. Moreover, it would seem highly unjust for plaintiff to spend more than what is at issue in this case so that TSA can unnecessarily depose

over a dozen witnesses who bear no relevance to this case. If plaintiff prevails in this action, this unnecessary expense would ultimately be borne unjustly by taxpayers.

Instead, TSA suggests to the court that such a result would be just because these motions are granted routinely in TSA theft cases. Quite to the contrary. In fact, TSA failed to cite the most recent case addressing the issue, *Fulda v. Transportation Security Administration*, No. 08-159, United States District Court, District of Maryland (2008). In that case, the Court denied the motion to transfer *before plaintiff even filed a response*. In that order, attached as Ex. E, the court cited "the relative resources and convenience of the parties." (Id.) The Court should similarly deny TSA's motion. The equities clearly favor plaintiff.

Respectfully submitted,

/s/ Joseph Collins
Joseph Collins

Joseph Collins
356 W. Scott St.
Chicago, IL 60610
Phone: (312) 440-0593

## Certificate of Service

Joseph Collins, an attorney, certifies that on August 4, 2008, he caused to be served the forgoing Opposition To Motion To Transfer by electronic mail upon defendants at donald.lorenzen@usdoj.gov.

s/ Joseph Collins

JOSEPH COLLINS
356 W. Scott Street
Chicago, Illinois 60610
(312) 440-0593